UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD D. BURPEE,<br><br>        Petitioner,<br><br>   v.<br><br>A. HEDGPETH, Warden,<br><br>        Respondent.<br>_____/ | No. C-12-3717 EMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Todd Burpee, a state prisoner at Sierra Conservation Center, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2009 convictions for assault with intent to commit rape and forcible penetration, kidnaping to commit rape and related counts. The petition is now ready for a decision on the merits. For the reasons discussed below, the petition is denied.

## II.    BACKGROUND

A.    <u>The Crimes</u>

The California Court of Appeal summarized the evidence of the crimes presented at trial:

> I. Prosecution Case
> The jury heard testimony in court and a recorded statement the victim gave from a hospital bed. Together they produced the following evidence:
>
> After her high school day ended on October 30, 2007, the 17–year–old victim bicycled home. She lived in an apartment building. As she prepared to lock up her bicycle outside the building garage, she noticed a man standing nearby and, at his request, opened a locked door to let him into the apartment structure.

> The victim entered a stairwell and defendant followed her, causing her alarm. She returned to the bicycle parking area, where the man attacked her. He told her either to take off her pants or not to scream, otherwise he would kill her. He hit her, put his hand over her mouth to stifle her screaming, and forced her to the ground.
>
> Once the victim was on the ground, defendant twisted her neck and was strangling her, causing great pain. She lost consciousness and regained it. At that point defendant began to slam her head into the concrete paving.
>
> Defendant dragged the victim facedown along the ground and placed her in the back seat of a car. The assailant draped a large light-green cloth over her. She noticed some items in the back seat of the car, including a shoebox.
>
> The man drove her away in the car. As he was driving, she heard him talking to someone he called Sara on his cell phone. This individual turned out to be Sara Jean Dahlen, defendant's then-girlfriend.
>
> Defendant stopped the car and pulled down the victim's pants and underwear to the middle of her thighs. All along, since being taken to the car, she had pretended to be unconscious, and she continued to do so. Defendant inserted something—she sensed that it was his finger but did not see if that was the case—in her vagina. He then placed the cloth back on her and left her alone in the car.
>
> The victim waited awhile, got out of the car, and ran. Despite her state of bloody dishevelment, people passing by in their vehicles refused to stop and help her. Eventually, however, someone rendered assistance.
>
> At the hospital, the victim was found to have injuries consistent with a sustained assault and strangulation.
>
> The police found a wealth of evidence identifying defendant as the assailant. For example, they searched his car for evidence and found blood and the victim's missing earring in the back seat. Blood containing the victim's deoxyribonucleic acid (DNA) was found on defendant's sweatshirt and on items and material retrieved from his car. The victim had described to police the logo on the shoebox in the back seat of the car used to transport her, and they found a shoebox with that logo in the back seat of defendant's car.
>
> II. Defense Case
> Defendant presented no evidence, but defense counsel cross-examined prosecution witnesses.

*People v. Burpee*, 2011 WL 2623539 *1-2 (Cal. App. 6 Dist. 2011); Ex. 8.[1]

---

[1] All references herein to exhibits are to the exhibits submitted by Respondent in support of the answer.

2

For the Northern District of California

B.  Procedural History

At a jury trial in Santa Clara County Superior Court, Burpee was found not guilty of attempted murder and guilty of two counts of assault with intent to commit rape and forcible sexual penetration, two counts of assault by means of force likely to produce great bodily injury, one count of kidnaping to commit rape and forcible penetration and one count of forcible sexual penetration. The jury also found true allegations that Burpee personally inflicted great bodily injury on the victim and that his kidnaping of the victim substantially increased the risk of harm above that inherent in the underlying crime of forcible sexual penetration. Clerk's Transcript ("CT") at 678-91, 694, 702. He also admitted the allegation that he was out of custody on his own recognizance for grand theft when he committed the crimes. CT at 441. Burpee was sentenced to an indeterminate term of 25 years to life and a consecutive 18 year determinate term. CT at 779-84.

Burpee timely appealed and filed a motion in the trial court for disclosure of confidential juror information, that was later denied. Ex. 11 at 1-36. He then filed an appeal from the trial court's denial of the juror information. On June 29, 2011, the California Court of Appeal affirmed the conviction in *People v. Burpee*, 2011 WL 2623539 (Cal. App. 6 Dist. 2011) (Ex. 8), and affirmed the denial of the release of the confidential juror information in *People v. Burpee*, 2011 WL 2565383 (Cal. App. 6 Dist. 2011) (Ex. 16). The California Supreme Court summarily denied several petitions for review. Exs. 10, 18, 31. Burpee then filed his federal petition for writ of habeas corpus. The Court issued an order to show cause why the petition should not be granted. Respondent has filed an answer and Burpee filed a traverse.[2] The matter is ready for a decision on the merits.

### III.  STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The

---

[2] After requesting several extensions to file a traverse Burpee instead filed a motion to stay to exhaust further claims that the Court denied without prejudice. The Court discussed the deficiencies in the motion and provided Burpee an additional opportunity to file another motion to stay or a traverse. He chose to file a traverse.

3

Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, which applies to the final claim here, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). When confronted with such a decision, a federal court should conduct an independent review of the record to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Himes*, 336 F.3d at 853; *Delgado*, 223 F.3d at 982.

## IV. **DISCUSSION**

Burpee argues that: (1) there was insufficient evidence to support two separate assault convictions; (2) his rights were violated by the trial court denying him confidential juror information; and (3) ineffective assistance of trial counsel.[3] The Court will address each claim in turn.

A. <u>Sufficiency of the Evidence</u>

Burpee argues that there was insufficient evidence that he committed two separate assaults of the victim resulting in two separate convictions for Cal. Penal Code § 220 (assault with intent commit forcible sexual penetration) and two separate convictions for Cal. Penal Code § 245 (assault with force to produce great bodily injury).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A convicted individual who alleges that the evidence in support of his conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a claim for the violation of due process. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). A court reviewing an insufficiency of the evidence claim does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Instead, "the only question under *Jackson* is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012) (per curiam). The reviewing court may not substitute its judgment for that of the jury; "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). Under *Jackson*, a jury's credibility determinations are entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

---

[3] Burpee has presented two separate claims of ineffective assistance of counsel that the Court has addressed together as one claim.

5

When a sufficiency of the evidence claim that was rejected in state court is reviewed on federal habeas corpus, it is subject to a "twice-deferential standard." *Parker*, 132 S. Ct. at 2152. First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). Second, the court must apply 28 U.S.C. § 2254(d)(1) to the state court's decision and determine whether its application of *Jackson* was objectively unreasonable. *Id.*

The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. However, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064.

The state court set forth the relevant background for this claim:

> The victim's testimony pointed to two assaults separated in time. "I was strangled and then after that I don't remember," she testified. "What is the next thing you remember after everything went black?" the prosecutor asked. "I got my conscious back at some point and I was laying on the ground, and I was hardly able to open my eye, and the next thing I know my head was banging against the concrete several times."
>
> The section 220 charges were presented in counts two and three, the section 245 charges in counts four and five. The second amended information and the verdict forms contained identical language for each two-count set of charges.
>
> During closing argument, the prosecutor argued for two convictions under sections 220 and 245 each. The prosecutor reminded the jury of evidence that defendant strangled the victim, which constituted one section 220 violation and one section 245 violation. He also reminded the jury of evidence that defendant slammed her head on the ground, which constituted a second section 220 violation and a second section 245 violation. He argued that these were two separate assaults, each warranting two convictions.
>
> The prosecutor cautioned that the jury should return two convictions on the sections 220 and 245 charges only if it was satisfied that defendant committed two separate acts, each of which justified finding him guilty on the first and second set of charges. If the jury concluded that defendant was simultaneously strangling and slamming the victim, it should find him guilty of one violation of sections 220 and 245.
>
> The jury was instructed on separate acts as follows: "With respect to the crimes charged in Counts 2 and 3, in order to find the defendant

> guilty you must all agree that the People have proved that the defendant committed the same act or acts necessary for each crime. However, you may not use the same acts to satisfy the elements of both Counts, except with respect to the element of intent. [¶] With respect to the crimes charged in Counts 4 and 5, in order to find the defendant guilty you must all agree that the People have proved that the defendant committed the same act or acts necessary for each crime. However, you may not use the same acts to satisfy the elements of both counts."

*People v. Burpee*, 2011 WL 2623539 *2-3 (footnotes omitted); Ex. 8.

The court of appeal then discussed the applicable state law and noted that *People v. Harrison*, 48 Cal.3d 321, 334 (1989) was on point. In *Harrison*, the California Supreme Court rejected the contention that the defendant could not be convicted of multiple acts of digital penetration committed in the course of a 7 to 10 minute attack on the victim as she struggled and fought back. *Id*. The court of appeal in this case then rejected the claim:

> *Harrison*, *supra*, 48 Cal.3d 321, 256 Cal.Rptr. 401, 768 P.2d 1078, leads us to reject defendant's claim.
>
> Here as in *Harrison* there were separate violations of the criminal law, done in this case to further defendant's sexual aim or aims. Defendant first strangled the victim, in what the jury could infer was an attempt to subdue her to facilitate his sexual assault, an act that violated section 220 and section 245. A period of time passed during which the victim was unconscious. When she awoke, defendant committed another violation of sections 220 and 245 by slamming her head against the ground, in what the jury could infer was a second attempt to subdue her to facilitate his eventual sexual assault.
>
> On this record, we cannot tell how much time separated the two assaults. It may have been little. But there is evidence from which a rational trier of fact could conclude that the two assaults were separated in time.
>
> We need not adopt wholesale the reasoning of *Harrison*, *supra*, 48 Cal.3d 321, 256 Cal.Rptr. 401, 768 P.2d 1078, to reach this conclusion. This is a difficult area of the law and *Harrison's* reasoning and result must be limited to the statute it addressed and ones that apply by analogy.
>
> For instance, it is unlikely that *Harrison* could be extended to the point that a bank robber who reaches over the counter and scoops money out of a teller's various drawer slots is guilty of as many crimes as the drawer has slots. Thus, as defendant asserts, it is not enough to say in every case that once a crime is complete every subsequent act constitutes a new and separate violation. The fact that the bank robbery would be complete once the robber scoops the money out of the first slot would not justify multiple convictions based on the number of slots the drawer has. (*See People v. Hertzig* (2007) 156

Cal.App.4th 398, 401–403, 67 Cal.Rptr.3d 312 [defendant who possessed 30 pornographic videos involving children on a single computer guilty of but one violation of section 311.11].) "[W]e reject the notion that possession of multiple images on one computer under the present circumstances can result in multiple violations of the possession statute." (*Id*. at pp. 401–402, 67 Cal.Rptr.3d 312.)

To the extent that defendant's argument contravenes *Harrison* and any logical extension of the facts of that case to this one, however, we are compelled to reject his assertion. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455, 20 Cal.Rptr. 321, 369 P.2d 937.) *Harrison's* rule that "a new and separate violation of section 289 is 'completed' each time a new and separate 'penetration, however slight' occurs" (*Harrison*, *supra*, 48 Cal.3d at p. 329, 256 Cal.Rptr. 401, 768 P.2d 1078, italics deleted) can be extended only so far, lest there be a questionable fragmenting of crimes with unduly punitive results. (*See People v. Oppenheimer*, *supra*, 156 Cal. 733, 106 P. 74; *People v. Stephens*, *supra*, 79 Cal. 428, 21 P. 856; *People v. Epps*, supra, 122 Cal.App.3d 691, 176 Cal.Rptr. 332.) But the *Harrison* rule does extend to this case.

The victim remained in peril without interruption and was not able to retreat to a place of safety only to be aggrieved later, a factual scenario that would mark separate offenses beyond cavil. At the same time, however, there was evidence that allowed a rational trier of fact to find that defendant engaged in more than a single uninterrupted assault on the victim, something that would arguably mark a single offense (but see *Harrison*, *supra*, 48 Cal.3d 321, 256 Cal.Rptr. 401, 768 P.2d 1078). Defendant strangled the victim, caused her to fall unconscious, and desisted from the strangulation. She awoke and he began to slam her head against the concrete paving after that. These were separate assaults under sections 220 and 245; each entitled the prosecution to seek separate convictions. This would be true under a test advantageous to defendants that *Harrison* disapproved, namely whether there had been an "appreciable passage of time, or ... a reasonable opportunity for reflection." (*People v. Hammon*, supra, 191 Cal.App.3d at p. 1099, 236 Cal.Rptr. 822, fn. omitted.) Here, the jury could find either factor to exist under the evidence presented. In sum, even if the completion of a crime cannot always be the last word in determining the number of violations that occurs, the evidence here was sufficient for a rational trier of fact to impose all four convictions (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560), which ends our due process inquiry. Defendant's claim is without merit. FN8

> FN8. We do not perceive the events here—i.e., the entire episode of defendant's violence that is termed a transaction in the law's bloodless language—to involve continuing offenses. Generally, a continuing offense extends over considerable time and involves uninterrupted conduct, such as failing to register as a sex offender or cultivating marijuana. "'A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may

8

> occupy.' " (*U.S. v. Midstate Co.* (1939) 306 U.S. 161, 166, 59 S.Ct. 412, 83 L.Ed. 563.) "The notion of 'continuing offense' has traditionally identified a type of offense fundamentally different from most known to the common law.... [A] criminal offense is typically completed as soon as each element of the crime has occurred. For example, a larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use. The offense does not 'continue' over time. The crime is complete when the act is complete. A 'continuing offense,' in contrast, is [one that consists of] an unlawful course of conduct that does perdure." (*U.S. v. McGoff* (D.C.Cir.1987) 831 F.2d 1071, 1078.)

*People v. Burpee*, 2011 WL 2623539 *4-5; Ex.8.

Burpee has failed to demonstrate that the state court denial was contrary to federal authority, especially in light to the high standard sufficiency of evidence claims face under AEDPA. State law allows for multiple convictions for assaults on a single victim and the jury was properly instructed. The prosecutor emphasized that the jury must find different acts were perpetrated to satisfy the elements of the separate counts. To obtain habeas relief Burpee must show that the jury verdict of multiple convictions was so unsupportable that if fell below the threshold of bare rationality. He can not meet his burden because there was sufficient evidence to support the multiple findings. While it was not clear the amount of time that occurred between the strangulation of the victim and the pounding her head against the ground due to her becoming unconscious, there was evidence for the jury to infer that there was a passage of time to support a separate assault. While there was not overwhelming evidence, the state court decision was not objectively unreasonable. This claim is denied.

B.    <u>Confidential Jury Information</u>

Burpee next argues that the trial court erred in denying his request for confidential juror information that he sought after the guilty verdict. This claim was denied in a separate appeal from the underlying conviction. Prior to trial Burpee had filed an extensive motion to change venue as the case had attracted a great deal of media coverage. The motion was denied and trial occurred from May 11 to May 28, 2009, in Santa Clara County. The court of appeal set forth the background:

Each prospective juror was given a questionnaire that asked about his or her exposure to news coverage of the case. This gave counsel an opportunity to question prospective jurors about their exposure if they had any.

On May 11, 2009, at the outset of trial and just before opening statements, the trial court admonished the jurors as follows:

"I will now explain some basic rules of law and procedure. These rules ensure that both sides receive a fair trial. During the trial do not talk about the case or about any people or subjects involved in the case with anyone—not even your family, friends, spiritual advisors or therapists. Do not share information about the case by writing, by e-mail or on the Internet. You must not talk about the things with the other jurors either until the time comes for you to begin your deliberations.

"As jurors you may discuss the case only after the evidence has been presented, [and] the attorneys have completed their arguments. I will instruct you on the law. After I tell you to begin your deliberations you may discuss the case only in the jury room and only when the jurors are present. You must not allow anything that happens outside the courtroom to affect you during the trial. Do not listen, read or watch any news or commentary about the case from any source.

"You must reach a verdict without any consideration of punishment. Do not do any research on your own or as [a] group. Do not use a dictionary, Internet or other reference materials. Do not investigate the facts of law. Do not conduct any tests, experiments or visit the scene of any event involved in the case.

"If you happen to pass by the scene, do not stop or investigate.... [¶] During the trial do not speak to any trial witness or lawyer involved in the trial. Do not listen to anyone that tries to talk about the case or any of the people or subjects involved in it. If someone asks you questions, you can tell him or her that you can't talk about it. If that person keeps talking to you about the case, you must end the conversation. When the trial has ended and you have been released as jurors, you may not [ sic ] discuss the case with anyone, but under California law you must wait ninety days before negotiating or agreeing to accept any payment for information about the case.

"If you receive any information about the case from any source outside the trial even unintentionally, do not share that information with any other jurors. If you do receive such information or if anyone tries to influence you or any jurors, you must immediately tell the bailiff."

On May 12, 2009, with the jurors seated and hearing testimony, the trial court decided to make sure that the jurors were following the previous day's admonition with respect to news coverage or other reading material. The court noted, "[f]irst thing I want to cover—hopefully not an issue at all, [but] there has been some media coverage about the case that was in our newspaper in some articles and on the Internet. Anybody read any of those? Good." The court added, "if you do read information about the case, it is your obligation to

1  notify the bailiff about that so we can determine if it in any way causes a problem with you being a juror in the case. All right. Anything
2  else?"

3  In addition, at the close of three of the daily court sessions, the trial court alerted jurors to avoid news coverage about the case. On the
4  other session days, it made no specific admonition to the jurors to avoid news coverage, but reminded them of their duties generally,
5  including the duty not to research the case independently. Only on May 27, 2009, and apparently out of inadvertence, did the court not
6  give a relevant admonition. Closing arguments concluded on that day.

7  The verdicts came down on May 28, 2009, and the trial court entered judgment and handed down its sentence on September 11, 2009.
8
9  On June 15, 2009, defendant filed a motion to unseal juror identifying information under Code of Civil Procedure section 237, subdivision
   (b). His motion argued: "Good cause exists for disclosure of the
10 jurors' names, addresses, and telephone numbers. Trial counsel should have asked the court to question the jurors if they were exposed
11 to the media coverage. If they had, trial counsel should have moved for removal of the influenced jurors or for a mistrial, and he should
12 have renewed the motion for a change of venue. His failure to do so was deficient. His deficiency was prejudicial if at least one juror was
13 in fact exposed to the media coverage. Disclosure of the juror information is required for petitioner to establish prejudice in his claim
14 he received ineffective assistance of counsel."

15 The People responded, "defendant provides absolutely no facts indicating that the jury read, heard of, listened to, or was somehow, in
16 any way, exposed to [news] articles. [¶] Further, to unseal juror identifying information would be to grant defendant an unwarranted
17 fishing expedition for his investigatory purposes.... Such an outing was the exact type of fishing expedition the good cause requirements
18 of California Code of Civil Procedure section 237 [were] designed to prevent."
19
   In his reply, defendant asserted, "The overall theme of the
20 prosecution's response is the accusation the defense is on a 'fishing expedition.' This common retort ... does not fit the present situation....
21 [Defendant] has specific concerns, based on fact, that can be addressed with a few short questions to the jurors."
22
   The trial court heard argument on the motion on July 10, 2009.
23
   At the hearing, the trial court and the parties made these points:
24
   The trial court asked, "I know they [the jurors] were repeatedly
25 advised not to [follow news coverage], and they agreed to that. Is it your position that we should not presume that they followed these
26 instructions and that we should, you know, find out?"

27 Defense counsel replied: "It is my position that although the court did advise the jury not to read the media, and that is something that they
28

11

agreed to do, that the Mercury News is a ubiquitous newspaper in the area."

Defense counsel was particularly concerned about reports in the San Jose Mercury News on May 5 and 14, 2009, that asserted that defendant had confessed to police his guilt of the crimes. "[S]ome of [the] information [in] those articles was dynamite," counsel asserted. "They were talking about materials, about how he made a confession to the police and wrote an apology to the victim." "Information that he confessed would have been fatal to the case."

"When this court did the voir dire," defense counsel acknowledged, "a lot of the jurors responded to the questionnaire and some of the questions they had about the case. Most of those people did not end up in the jury pool, and most of those people frankly did not remember details of the case when the earlier details of the case came out previously...."

The trial court commented: "I don't have it right in front of me, but I am presuming that I instructed them not only not to view any media, but if they started to, to stop, and that if they did, to report that to the court, and that's essentially what [trial counsel] should have done by having them pre-instructed that they had affirmed a duty to report any exposure in the media to the case. His failure to ask the court to inquire, is that the same thing?"

Defense counsel replied: "Again, the problem becomes human nature." "I don't think the question is the bad faith necessarily of the jury, but just human nature. That it is just very difficult in a high-publicity case—certainly one as heart wrenching as this one...." "[T]he question becomes whether or not a jury had stumbled upon something...." "[G]iven the amount of publicity ... and the charged nature in the articles, justice requires to at least ask the jurors about the case."

The trial court asked the prosecution for its views and the prosecution, represented by a certified law clerk, responded: "We have provided many different cases that flesh out the meaning of what a showing of good cause is, and in every single one of those cases the petitioner has provided at least a scrap of evidence showing that there was possible juror misconduct here.

"As defense counsel has admitted, there is absolutely no evidence, yet defense counsel have framed their issue in whether the court would presume that juror misconduct occurred and they base that presumption on human nature.

"If the court presumes solely based on human nature, we would have to go into every single jury of every single trial because it is based of people who have human nature who could possibly be exposed to newspaper articles."

"[T]here hasn't been at least a fragment of evidence to support that there was some sort of juror misconduct."

"What actually occurred in the jury box and the purpose and legislative intent behind section 237 was to protect the privacy of

12

> those jurors.  Therefore, that is why there is needed some sort of information to establish and meet that good-cause standard of showing before we unlock that key and find out more, and defense counsel clearly has not provided anything to even approach a good-cause showing yet."
>
> Defense counsel had the last word: "[I]f you can show that a juror actually commits misconduct, we would not need to talk to the juror. We would have evidence."
>
> The trial court ruled against defendant: "I am going to deny the motion.  As I said, I understand the argument.  I don't think there has been evidence presented to show the prima [facie] requirement under [section] 237, and that at this point there has been nothing presented that would require the court to disclose the juror information."

*People v. Burpee*, 2011 WL 2565383 *1-4; Ex.16.  The court of appeal then described the relevant state law and denied the claim.  The state court also discussed that there was no violation of the Fifth or Sixth Amendment by denying the juror information.  *Id.* at 5; Ex.16.

Burpee cites no United States Supreme Court authority recognizing a constitutional right to have jury information unsealed, and the Court has found none.  *See e.g., Yang v. McDonald*, 2012 WL 6738311 *18 (E.D. Cal. 2012); *White v. Knowles*, 2011 WL 1196053 *5 (N.D. Cal. 2011). Thus, there can be no federal violation to warrant habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)).  Nor can Burpee transform a state law issue into a federal one merely by asserting a violation of due process.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

Regardless, there was no due process violation.  As noted in the state court ruling, the trial court gave lengthy and repeated admonishments to the jury regarding speaking to others or reviewing outside information about the case.  Jurors were instructed to tell the bailiff if they were exposed to media reports.  There is no indication that any juror used outside information or reviewed media reports other than Burpee's assumption that human nature would compel jurors to seek information.  It is not assumed that jurors ignore and disregard instructions, in fact it is presumed that the jury follows court instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  As there is

no Supreme Court authority and as Burpee has failed to present any evidence demonstrating misconduct, this claim is denied.

C.      Ineffective Assistance of Counsel

Burpee next argues that trial counsel was ineffective for failing to present a viable defense and for failing to ask the trial court to question jurors about any exposure to media coverage during trial.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id*. at 1410–11. The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable

argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

To demonstrate deficient performance, a petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

Both of these claims were denied in state habeas petitions without a reasoned opinion by the state courts. Thus, the Court has conducted an independent review of the record to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Himes*, 336 F.3d at 853; *Delgado*, 223 F.3d at 982.

1.  Viable Defense

Burpee first contends that trial counsel was ineffective for changing defense strategies. Burpee and his trial counsel originally expected the prosecution to introduce his confession at trial. Ex. 25 at 23. Burpee stated to police that he did not have a plan but saw the victim, twisted her neck and slammed her head into the ground, but he did not intend to kill her. *Id*. at 10. When she lay on the ground not moving, he thought she was dead and he became scared, so he put her in his car covered her with a sheet and drove away. *Id*. at 10-11. He left his car and when he returned she was gone and there were police at the scene. *Id*. at 11. Burpee originally denied sexually assaulting the victim but then admitted he placed his finger in her vagina. He said it was curiosity that motivated him as he thought she was dead. *Id*. at 12.

Believing the confession would be admitted at trial, trial counsel originally intended to present a defense that Burpee lacked the specific intent to attempt murder and was not guilty of kidnaping or sexual penetration because he believed she was dead. Ex. 25 at 23.[4] The prosecution announced it was not going to use the confession and trial counsel changed the defense strategy to one of identity, in that Burpee was not the assailant. *Id*. at 24. This way Burpee would not have to

---

[4] Though, the victim stated that Burpee pinched her while in the car to see if she was awake. Reporter's Transcript at 676.

15

1  testify.[5]  Burpee indeed did not testify, no witnesses were presented for the defense and instead trial
2  counsel relied on the cross-examination of prosecution witnesses.  This strategy was partially
3  successfully as Burpee was found not guilty of attempted murder.

4  Burpee argues that trial counsel was ineffective for not pursuing the original defense
5  regarding intent.  Burpee also submitted a declaration with his state habeas petitions stating that he
6  would have preferred to have followed the intent defense strategy and he would have testified at trial
7  and told the jury the same information he told police.  Ex. 26 at 101.

8  After reviewing the record it is abundantly clear that state court denial was not an
9  unreasonable application of S*trickland*.  Trial counsel was neither deficient nor was Burpee
10 prejudiced.  While a defense of mistaken identity was difficult based on the evidence, the
11 overwhelming evidence against Burpee made any defense difficult.[6]  Burpee has failed to show that
12 trial counsel's actions were unreasonable.  Trial counsel's actions during trial and his later statement
13 discussing his reasoning demonstrate that he made careful tactical decisions and there is no
14 indication of deficient performance.  That trial counsel only succeeded in obtaining a not guilty
15 verdict on the attempted murder count will not lead to habeas relief.

16 Moreover, Burpee has failed to show that him testifying and then subject to cross
17 examination regarding sexually assaulting what he believed was a dead women he had killed would
18 have resulted in a different verdict.  Even assuming trial counsel was deficient, there was no
19 prejudice and Burpee has not shown a violation of *Strickland's* highly deferential standard.
20 Reasonable strategic choices by counsel such as this are "virtually unchallengeable" on federal
21 habeas corpus review.  *Strickland*, at 690; *see also Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th
22 Cir. 2009) (the court may "neither second-guess counsel's decisions, nor apply the fabled
23 twenty-twenty vision of hindsight ....").  This claim is denied.

---

[5] Trial counsel provided a declaration regarding his strategic decision that was provided in state habeas proceedings.  Ex. 26 at 102-03.

[6] Though, the victim was unable to identify the assailant which support's trial counsel's strategy that Burpee was not the assailant.

### 2. Media Coverage

Burpee next contends that trial counsel was ineffective for failing to ask the court to question jurors about media exposure during trial. As set forth in Burpee's related claim above, there has been no indication that jurors were exposed to media reports during trial. Jurors were repeatedly instructed by the trial court not to view media reports about the incident or trial and if they did, report it to a bailiff to inform the court. As with his prior claim, Burpee contends that jurors must have ignored the instructions and trial counsel should have pursued the matter. Though, trial counsel did file an extensive motion for a change of venue prior to trial and a motion to unseal the juror information following the verdict to discover if there had been media exposure, that was denied by the trial court. As the trial court repeatedly instructed the jury not to view media reports and as trial counsel filed a motion to unseal the juror information, Burpee has not shown trial counsel's performance was deficient.

Assuming trial counsel was deficient, there was no prejudice. Burpee has not shown that the trial court would have granted the motion or that any jurors were in fact exposed to media coverage of the case. Relying on the notion that it is human nature to be curious or that there was so much coverage that there must have been exposure and a juror would have ignored the court's instruction to report it, is insufficient and far to attenuated to warrant habeas relief. *See Weeks*, 528 U.S. at 234 (it is presumed that the jury follows court instructions). The state court denial was not an unreasonable application of Supreme Court authority and this claim is denied.

///
///
///
///
///
///
///
///
///

17

# V. <u>CONCLUSION</u>

The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: December 20, 2013

_____
EDWARD M. CHEN
United States District Judge